## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ANDERS ALM, WILHELMUS P.J. APPEL, HERNAN ARBER, JASON BAPTISTE, GABRIEL P. BAPTISTELLA, CORNELIS P. BOELE, GRAHAM BROWN, QINGNING CAO, KERRY CHEN, MARK T. CHERALLA, JONATHAN S. DALE, NGUYEN Q. DAT, PETER DAVIDA, KERRY FLANNAGAN, TIMOTHY D. FRANKLIN, MATTHEW G. GOSWICK, JASPER GRITTER, ADRIANUS J. HEIJLIGERS, DANIEL HILDERMAN, IRVIN HOOGLAND, TOMAS ILLØKKEN, ANDERS JOHNSGAARD, BORUT KOLARIC, SIMON KORAK, JAN W. KORT, TIM MAK, MAURICE J. MARTINEZ, MIRACLE N. OCHOMMA, KAI Y. OOI, SMITA PANCHAL, EVA PAPADOPOULO, HAN M. PENG, ALISON PIKE, LUKE PORTER, KAINAN QU, ANKUR RAKSHIT, HENRIK M. RAUTIO, DANIEL C. REYNOLDS, HARRO RIEDSTRA, SEVER A. ROCSIN, LOEK ROSENBAUM, IGOR L. SAN MARTIN, ROLAND R. SCHUTTE, KAREL SEGERS, LEONID SHAPIRO, JAMES SPOKOINI, NATASHA STEWART, AMY SYED, KEN H. TEOH, NICHOLAS TSUI, SAREL J. VENTER, JACQUELINE WALLIN, GREGOR A. WALLNER, IDY D. WATT, MAURICE WEISZ, ZACHARY WILDES, NAOR YEHUDAEY, CRAIG YOUNG,  Plaintiffs,  v.  JEREMY SPENCE, JOHN DOE NO. 1 a/k/a BLACKXANTUS,  Defendants. | Case No.  **COMPLAINT AND DEMAND <u>FOR JURY TRIAL</u>** |

Plaintiffs, by and through their undersigned counsel, Jonathan Brennan PLLC, for their

Complaint allege as follows:

## PRELIMINARY STATEMENT

1.       Jeremey Spence ("Spence"), was a 22-year old New York University student. He was also, by all outward appearances, a successful cryptocurrency trader.  Operating on Discord, an online forum popular with those interested in cryptocurrency, he shared his trading secrets, boasted about his winning trades, and built an extensive online following.

2.       Spence leveraged that online following to promote several cryptocurrency investment funds he was operating.  The largest of these was the Coin Signals Mex Fund (the "CSM Fund") through which Spence would place trades on BitMEX.com ("BitMEX"), an online platform that allowed traders to engage in leveraged cryptocurrency trading.

3.       In addition to the CSM Fund, Spence also ran two other funds, the Alts Fund, which was devoted to trading in alternative cryptocurrencies, and the Long-Term Fund, which was designed to allow for cryptocurrency investments with a longer time horizon than those in the CSM Fund.  (The CSM Fund, Alts Fund, and the Long-Term Fund are collectively referred to in this Complaint as the "Funds.")

4.       None of the Funds were established as separate legal entities, and none was registered with any appropriate regulatory body.  In reality, they were simply loose pools of money that Spence held and traded in his own name.

5.       By all outward appearances to investors, Spence's Funds performed well and operated like normal investment funds for the first eight months of 2018.  Spence, posting under the handle "coin_signals," would communicate with his investors through a variety of forums, or "channels" on Discord and would update them about the performance of each fund.

6.       Spence, and those assisting him, would administer the fund through "rounds," each lasting approximately two weeks.  At the beginning of a round, Spence would use available assets,

including any newly contributed assets, to make trades based on his then-prevailing view of the market.  At the end of a round, Spence would exit his trading positions, calculate the Funds' gains or losses, report those numbers to investors, and then process any outstanding withdrawal requests.

7.     To handle the administrative tasks of running the Funds, Spence turned to one of the funds' investors, Defendant John Doe #1, who posted on Discord under the handle BlackXantus ("BX").  BX designed and built a software application (referred to as the "Bot,") to automate a number of routine and repetitive tasks.  In each of the Funds, an investor could send a simple command to the Bot which would allow the investor to (1) deposit cryptocurrency into the Funds, (2) request withdrawals from the Funds, or (3) inquire about the investor's current balance in the Funds.

8.     In August 2018, however, market movements caught Spence by surprise, and the Funds incurred large trading losses.  Those losses, and investor anxiety in the market, triggered a large number of withdrawal requests from investors.

9.     Rather than honestly disclosing the full extent of his losses, Spence spent the next three months spinning a web of deception.  In addition to lying to his investors about the Funds' then-current losses, he traded the Funds into further losses.  He repeatedly lied to his investors about the status of their withdrawals, and he invented increasingly more elaborate and implausible excuses to keep them at bay.

10.    He told investors he was restructuring the Funds and would get them their withdrawals once the restructuring is complete.  He manufactured a family emergency and then created an imaginary hack that were supposedly both responsible for further delays in investor withdrawals.

11.     In early November he announced he was closing the Funds and promised investors a plan of distribution that would return their full investments to them.  Nevertheless, he never put forth a plan of distribution.

12.     Finally, on November 28, 2018, out of excuses and no closer to distributing funds, Spence finally came clean and admitted his fraud.  He told investors he lied about the size of the hack, he revealed for the first time that his Funds contain certain illiquid assets, and he confessed to incurring more trading losses even after announcing the closure of the Funds.

13.     In addition to running the Funds, Spence also solicited investors to pool funds with him to participate in an Initial Coin Offering ("ICO") being offered by the start-up EverMarkets. Several Plaintiffs sent Spence their cryptocurrency to participate in the EverMarkets ICO.  Spence pooled the funds together and sent them to EverMarkets to purchase tokens as part of the ICO.

14.     After receiving investor funds, however, EverMarkets cancelled their ICO and refunded all money back to investors.  Spence received the pooled money back from EverMarkets, but kept the money for himself, rather than returning those funds to Plaintiffs.

15.     Although Spence repeatedly stated that he had a significant amount of investor funds still in his control, and although he has repeatedly made promises to distribute those funds, to date Plaintiffs have received no recovery of their investments from Spence.

16.     Plaintiffs bring this action to make Spence live up to his promises and pay for his fraud.  They seek recovery of their property as well as damages to hold Spence accountable for the harm caused by his lies and deceit.

## PARTIES

### PLAINTIFFS

17.     Plaintiff ANDERS ALM is an individual domiciled in Gjøvik, Norway.  Plaintiff ALM invested in the CSM Fund, the Alts Fund, and the EverMarkets ICO.

18.     Plaintiff WILHELMUS P. J. APPEL is an individual domiciled in Waalre, the Netherlands.  Plaintiff APPEL invested in the CSM Fund.

19.     Plaintiff HERNAN ARBER is an individual domiciled in Tel Aviv-Yafo, Israel. Plaintiff ARBER invested in the CSM Fund and the Alts Fund.

20.     Plaintiff JASON BAPTISTE is an individual domiciled in London, England. Plaintiff BAPTISTE invested in the CSM Fund.

21.     Plaintiff GABRIEL P. BAPTISTELLA is an individual domiciled in Sao Paulo, Brazil.  Plaintiff BAPTISTELLA invested in the CSM Fund.

22.     Plaintiff CORNELIS P. BOELE is an individual domiciled in Leiden, the Netherlands.  Plaintiff BOELE invested in the CSM Fund.

23.     Plaintiff GRAHAM BROWN is an individual domiciled in Henderson, Nevada. Plaintiff BROWN invested in the CSM Fund, the Alts Fund, the Long-Term Fund, and the EverMarkets ICO.

24.     Plaintiff QINGNING CAO is an individual domiciled in Hefei, People's Republic of China.  Plaintiff CAO invested in the CSM Fund.

25.     Plaintiff KERRY CHEN is an individual domiciled in Melbourne, Australia. Plaintiff CHEN invested in the CSM Fund.

26.     Plaintiff MARK T. CHERALLA is an individual domiciled in Baton Rouge, Louisiana.  Plaintiff CHERALLA invested in the CSM Fund.

27.     Plaintiff JONATHAN S. DALE is an individual domiciled in London, England. Plaintiff DALE invested in the CSM Fund.

28.     Plaintiff NGUYEN Q. DAT is an individual domiciled in Hanoi, Vietnam.  Plaintiff DAT invested in the CSM Fund.

29.     Plaintiff PETER DAVIDA is an individual domiciled in Ruggell, Liechtenstein. Plaintiff DAVIDA invested in the CSM Fund.

30.     Plaintiff KERRY FLANNAGAN is an individual domiciled in London, England. Plaintiff FLANNAGAN invested in the CSM Fund and the Alts Fund.

31.     Plaintiff TIMOTHY D. FRANKLIN is an individual domiciled in El Cajon, California.  Plaintiff FRANKLIN invested in the CSM Fund and the EverMarkets ICO.

32.     Plaintiff MATTHEW G. GOSWICK is an individual domiciled in San Jose, California.  Plaintiff GOSWICK invested in the CSM Fund.

33.     Plaintiff JASPER GRITTER is an individual domiciled in the Netherlands. Plaintiff GRITTER invested in the CSM Fund.

34.     Plaintiff ADRIANUS J. HEIJLIGERS is an individual domiciled in Asten, the Netherlands.  Plaintiff HEIJLIGERS invested in the CSM Fund.

35.     Plaintiff DANIEL HILDERMAN is an individual domiciled in Hillsboro, Oregon. Plaintiff HILDERMAN invested in the CSM Fund.

36.     Plaintiff IRVIN HOOGLAND is an individual domiciled in the Hague, the Netherlands.  Plaintiff HOOGLAND invested in the CSM Fund.

37.     Plaintiff TOMAS ILLØKKEN is an individual domiciled in Gjøvik, Norway. Plaintiff ILLØKKEN invested in the CSM Fund and the Long-Term Fund.

38.     Plaintiff ANDERS JOHNSGAARD is an individual domiciled in Gjøvik, Norway. Plaintiff JOHNSGAARD invested in the CSM Fund, the Alts Fund, and the Long-Term Fund.

39.     Plaintiff BORUT KOLARIC is an individual domiciled in Grosuplje, Slovenia. Plaintiff KOLARIC invested in the CSM Fund and the Alts Fund.

40.     Plaintiff SIMON KORAK is an individual domiciled in Montreal, Canada. Plaintiff KORAK invested in the CSM Fund.

41.     Plaintiff JAN W. KORT is an individual domiciled in Boston, Massachusetts. Plaintiff KORT invested in the CSM Fund.

42.     Plaintiff TIM MAK is an individual domiciled in Ljubljana, Slovenia.  Plaintiff MAK invested in the EverMarkets ICO.

43.     Plaintiff MAURICE J. MARTINEZ is an individual domiciled in Anchorage, Alaska.  Plaintiff MARTINEZ invested in the CSM Fund.

44.     Plaintiff MIRACLE N. OCHOMMA is an individual domiciled in Port Harcourt, Nigeria.  Plaintiff OCHOMMA invested in the CSM Fund.

45.     Plaintiff KAI Y. OOI is an individual domiciled in Footscray, Australia.  Plaintiff OOI invested in the CSM Fund.

46.     Plaintiff SMITA PANCHAL is an individual domiciled in Bull Creek, Australia. Plaintiff PANCHAL invested in the CSM Fund.

47.     Plaintiff EVA PAPADOPOULO is an individual domiciled in Lilyfield, Australia. Plaintiff PAPADOPOULO invested in the CSM Fund.

48.     Plaintiff HAN M. PENG is an individual domiciled in Altona North, Australia. Plaintiff PENG invested in the CSM Fund.

49.     Plaintiff ALISON PIKE is an individual domiciled in Maroochydore, Australia. Plaintiff PIKE invested in the CSM Fund.

50.     Plaintiff LUKE PORTER is an individual domiciled in St. Kilda East, Australia. Plaintiff PORTER invested in the CSM Fund.

51.     Plaintiff KAINAN QU is an individual domiciled in Ridgehaven, Australia. Plaintiff QU invested in the CSM Fund.

52.     Plaintiff ANKUR RAKSHIT is an individual domiciled in Glendale, California. Plaintiff RAKSHIT invested in the CSM Fund.

53.     Plaintiff HENRIK M. RAUTIO is an individual domiciled in Sundsvall, Sweden. Plaintiff RAUTIO invested in the CSM Fund, the Alts Fund, and the Long-Term Fund.

54.     Plaintiff DANIEL C. REYNOLDS is an individual domiciled in Las Vegas, Nevada. Plaintiff REYNOLDS invested in the CSM Fund.

55.     Plaintiff HARRO RIEDSTRA is an individual domiciled in Amsterdam, the Netherlands. Plaintiff RIEDSTRA invested in the CSM Fund.

56.     Plaintiff SEVER A. ROCSIN is an individual domiciled in Brussels, Belgium. Plaintiff ROCSIN invested in the CSM Fund.

57.     Plaintiff LOEK ROSENBAUM is an individual domiciled in Venlo, Netherlands. Plaintiff ROSENBAUM invested in the Alts Fund.

58.     Plaintiff IGOR L. SAN MARTIN is an individual domiciled in Vitoria-Gasteiz, Spain.  Plaintiff SAN MARTIN invested in the CSM Fund.

59.     Plaintiff ROLAND R. SCHUTTE is an individual domiciled in Amsterdam, The Netherlands.  Plaintiff SCHUTTE invested in the CSM Fund and the Alts Fund.

60.     Plaintiff KAREL SEGERS is an individual domiciled in Sydney, Australia. Plaintiff SEGERS invested in the CSM Fund.

61.     Plaintiff LEONID SHAPIRO is an individual domiciled in London, England. Plaintiff SHAPIRO invested in the CSM Fund.

62.     Plaintiff JAMES SPOKOINI is an individual domiciled in London, England. Plaintiff SPOKOINI invested in the CSM Fund and the Alts Fund.

63.     Plaintiff NATASHA STEWART is an individual domiciled in Peregian Springs, Australia.  Plaintiff STEWART invested in the CSM Fund.

64.     Plaintiff AMY SYED is an individual domiciled in London, England.  Plaintiff SYED invested in the CSM Fund.

65.     Plaintiff KEN H. TEOH is an individual domiciled in Kennington, Australia. Plaintiff TEOH invested in the CSM Fund.

66.     Plaintiff NICHOLAS TSUI is an individual domiciled in Moonee Ponds, Australia. Plaintiff TSUI invested in the CSM Fund.

67.     Plaintiff SAREL J. VENTER is an individual domiciled in Toronto, Canada. Plaintiff VENTER invested in the CSM Fund.

68.     Plaintiff JACQUELINE WALLIN is an individual domiciled in Billinudgel, Australia.  Plaintiff WALLIN invested in the CSM Fund.

69.     Plaintiff GREGOR A. WALLNER is an individual domiciled in Kaumberg, Austria.  Plaintiff WALLNER invested in the CSM Fund.

70.     Plaintiff IDY D. WATT is an individual domiciled in Prevessin-Moens, France. Plaintiff WATT invested in the CSM Fund.

71.   Plaintiff MAURICE WEISZ is an individual domiciled in Jackson, New Jersey. Plaintiff WEISZ invested in the CSM Fund and the Alts Fund.

72.   Plaintiff ZACHARY WILDES is an individual domiciled in Vancouver, Washington.  Plaintiff WILDES invested in the CSM Fund, the Alts Fund, the Long-Term Fund, and the EverMarkets ICO.

73.   Plaintiff NAOR YEHUDAEY is an individual domiciled in Tzur Yitzhak, Israel. Plaintiff YEHUDAEY invested in the CSM Fund and the EverMarkets ICO.

74.   Plaintiff CRAIG YOUNG is an individual domiciled in Doubleview, Australia. Plaintiff YOUNG invested in the CSM Fund and the EverMarkets ICO.

## DEFENDANTS

75.   Defendant SPENCE is an individual domiciled in New York, New York and is a citizen of New York.  At all times relevant thereto, SPENCE was the manager and primary promoter of the Funds.  He also solicited a pool of investors in connection with the EverMarkets Initial Coin Offering.

76.   Defendant JOHN DOE NO. 1 a/k/a BLACKXANTUS ("BX") is an individual believed to be domiciled in the United States.  His true name is unknown at this time as is the state of his domicile.   BX operated the computerized Bot that allowed investors to deposit cryptocurrency into the Funds, request withdrawals from the Funds, and inquire about their current balances.

## JURISDICTION AND VENUE

77.   This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds Seventy-Five Thousand Dollars ($75,000.00),

exclusive of interest, costs, and attorney's fees, and is an action between citizens of different states. It is also an action between citizens of a state and citizens or subjects of a foreign state.

78.     This Court has personal jurisdiction over the defendants because: (a) Spence is domiciled in this juridiction, (b) defendants operated, and continue to operate, an entity that is present and/or doing business within this jurisdiction, (c) one or more defendants are individuals residing and working within this jurisdiction, and (d) the defendants' tortious activity occurred within this jurisdiction.

79.     Venue of this action is proper in this court pursuant to 28 U.S.C. § 1391 as this is the judicial district in which Spence resides and the causes of action alleged herein arose in New York, New York.

## STATEMENT OF FACTS

### I.    CRYPTOCURRENCIES

80.     Cryptocurrencies are digital or virtual currencies in which encryption techniques are used to regulate the generation of units of currency and to verify the transfer of funds. Operating independently of central banks, cryptocurrencies generally employ blockchain technology (also known as distributed ledger) to record transactions over a decentralized network of computers.

81.     Bitcoin, developed in 2009, is one of the earliest and most well-known cryptocurrencies in the world.  Other cryptocurrencies, however, such as Litecoin, Ethereum, and Ripple, have been developed and gained popularity in the last few years.

82.     BitMEX is a leveraged trading platform that allows individuals to trade cryptocurrency derivative contracts.  Founded in 2014, BitMEX accepts deposits only in cryptocurrency and allows investors to use significant leverage when making their cryptocurrency trades.

II.     **SPENCE ESTABLISHES ONLINE GROUPS
        DEVOTED TO HIS CRYPTOCURRENCY TRADING**

83.     In 2017, many cryptocurrency investors participated in various online groups on Telegram, a secure, cloud-based messaging application.  These groups were ways for investors to exchange news, information, and opinions on the cryptocurrency market.

84.     During this period, Defendant Spence was running several such groups on Telegram.  Spence, using the handle @coin_signals and, later @real_coin_signals, would post information on developments in the cryptocurrency market as well as his opinions about which cryptocurrencies were performing well and which were not.

85.     The group was set up as "read only" -- meaning only Spence could post to it -- and all information was free.  Spence used this platform to describe in detail his own cryptocurrency trading and to position himself as an expert in the cryptocurrency trading market.

86.     Beginning in late 2017, Spence began inviting certain Telegram users to new online forums, called "channels," that he had established on Discord, a different online messaging and chat platform.  Unlike the Telegram group, which was free, Spence's Discord channels were designed to be subscription-based, with access provided exclusively to people who had agreed to pay Spence either a monthly or a one-time fee.

87.     For investors who held a significant amount of cryptocurrency, and for personal friends, Spence would often agree to waive the subscription fee.

III.    **SPENCE SOLICITS INVESTORS FOR THE CS MEX
        FUND, THE ALTS FUND, AND THE LONG-TERM FUND**

88.     Once users had migrated to the paid Discord channels, Spence gave participants a deeper look at his ideas and recommendations, in essence, sharing his trading with the group in real time.  Much of the early activity on these Discord channels was devoted to discussions of

Spence's leveraged derivative trading on BitMEX and how he had amassed a "stack" of Bitcoin as a result of that trading.

89.     While sharing his trading strategies on the Discord server, Spence was also actively soliciting members to invest in one or more of his proprietary funds.

90.     The primary vehicle for Spence's trading, and consequently his solicitations, was the CSM Fund, which consisted mostly of Spence's trading on BitMEX.  Spence, however, also ran two other funds, the Alts Fund, which was devoted to alternative cryptocurrencies, and the Long-Term Fund, which was devoted to cryptocurrency investments with a longer time horizon than in the CSM Fund.

91.     In connection with these solicitations Spence made the following representations:

   a.     That he was a successful cryptocurrency trader;

   b.     That his trading strategies had generated tremendous cryptocurrency gains for him;

   c.     That his funds accurately reported trading gains and losses; and

   d.     That investors could deposit and withdraw their funds at regularly-scheduled intervals.

92.     Spence's close personal friend and roommate, non-party Jaime Cruz-Herrera, actively participated in the solicitation of investors.  Posting under the handle CryptoSpaceGuy, Cruz-Herrera was a vocal advocate in the Discord channel on Spence's behalf.

93.     In his posts, he praised Spence's trading skills, encouraged users to invest with Spence, and generally "hyped" Spence's funds.

## IV.   THE FUNDS APPEAR TO OPERATE NORMALLY FOR THE FIRST EIGHT MONTHS OF 2018

94.     By all outward appearances, the CSM Fund, the Alts Fund, and the Long-Term Fund, performed well and operated like normal investment funds from the beginning of 2018 until

September 2018.   Spence, posting as "coin_signals," would communicate with his investors through Discord.  Two of his most prominent channels for communication were the CSM Fund Discord channel and the Crypto Signals Discord channel.

95.     According to the Discord chat history for these funds, Spence would supposedly administer the fund through "rounds," each lasting approximately two weeks.  At the beginning of a round, Spence would purportedly use available assets, including any newly contributed assets, to make trades based on his then-prevailing view of the market.  At the end of a round, Spence would calculate the Fund's gains or losses, report those numbers to the Fund's investors, and process any outstanding withdrawal requests.

96.     To handle the administrative tasks of running the fund, Spence turned to BX, one of the Funds' investors, who designed and built a software application (referred to as the "Bot,") to automate a number of routine and repetitive fund tasks.  For each of the Funds run by Spence, an investor could send a simple command to the Bot in order to (1) deposit cryptocurrency into a fund, (2) request withdrawals from a fund, or (3) request information about the investor's current balance in a fund.

97.     For the first eight months of 2018, at the end of each round Spence would exit his trading positions, report the results of the round to investors though Discord, and process any outstanding withdrawal requests.  BX would make an announcement about the deadlines for deposits and withdrawals in the upcoming round, and the process would begin all over again.

V.   **SPENCE INCURS OUTSIZED LOSSES AND REFUSES TO HONOR INVESTOR WITHDRAWAL REQUESTS**

98.     In August 2018, market movements caught Spence by surprise, and his various funds experienced large trading losses.  Making matters worse, Spence refused to close his trading positions or take evasive action to minimize losses.

99.     On September 11, 2018, in the Crypto Signals Discord channel, Spence wrote to investors apologizing for the "long round."  He tells them that he plans to remain long in his outstanding positions, calculate profits and losses for the Funds based on unrealized gains and losses, and then process withdrawals.

100.    On September 12, 2018, BX tells everyone on this same Discord channel, "LT, ALT, MEX funds have all been updated! you now have 24 hrs to withdraw from the mex fund."

101.    On September 13, 2018, BX informs the group that the window for making withdrawal requests has now closed.  Later that same day, he informs the group that withdrawal requests of less than 3 Bitcoin had been processed and that for withdrawal requests above that amount, "[I]t will be a bit to close the position and withdraw from mex."

102.    Later that same morning, Spence posts on the CSM Fund Discord channel that he has received an "extraordinarily large number of withdrawal requests this round."  He asks for a "few days" to send out the withdrawals, so he does not have to forcibly close out certain positions. He promises that the withdrawals "will be sent out the first opportunity I have."

103.    Unlike prior rounds, however, the overwhelming majority of these withdrawal requests would not be honored by Spence.  Instead, over the next few months, Spence would engage in a pattern of evasion and deception, concealing his losses from investors, lying to them about their withdrawals, and inventing a series of increasingly implausible excuses to keep them at bay.

A.     ***The Fund Restructuring***

104.    On September 24, 2018, Spence announces plans for a fund structure change saying that he would be closing many positions and decreasing leverage.  In the Crypto Signals Discord channel he tells investors there will be a new fund structure, and that he will "explain very

explicitly all of the withdrawal rules, and exceptions that may arise beyond our control."
Recognizing the growing unrest among his investors, Spence adds: "If anyone is not happy with
this new structure we are more than happy to issue a withdrawal for your balance[.]"

105.    On September 29, 2018, BX posts on the CSM Fund Discord forum that Spence
had now closed his positions so withdrawals could be paid out.  He then assures investors that fund
transfers from BitMEX have been scheduled and that withdrawals should be processed within 24
hours:

> @everyone the bot has been updated with the latest mex round pnl. @coin_signals
> did an amazing job at recovering from the loss last round. well done! CS has safely
> closed positions, so that the existing withdrawal queue can be paid out. The BTC
> has been scheduled from Bitmex and these withdrawals should be processed within
> 24hrs. Again, we apologize for the delay that was caused by so many requests last
> round. The new fund structure is just about finalized.

106.    Notwithstanding BX's promises, no withdrawals are paid out.

**B.     *Spence's Family Medical Emergency***

107.    On October 1, 2018, scrambling to hold off investors who have not received their
money, Spence posts on the Crypto Signals Discord channel that the lack of withdrawals are due
to a family medical emergency for which he has traveled home.  He promises to send out pending
withdrawals that evening and also promises to open a new 48-hour withdrawal round:

> Hi guys.
>
> I have had a hellish weekend. Without going into too much detail, one of my close
> family members has had some serious medical complications. I have not even been
> able to think about anything but that these past few days, let alone crypto...
>
> I understand there is a bit of unrest amongst the group as the last thing you heard
> from us is that withdrawals were coming out on Saturday. I am on my way home
> right now and will send btc out immediately when I get there tonight, so BX can
> process all of the withdrawals from the previous round.

* * *

- 16 -

When I get home we will open another withdrawal round for 48 hours. All requests will be processed after the withdraw window closes. I highly encourage anyone that is at all worried or unhappy with the fund to use this window and withdraw their funds. Both for me, and for you guys, it's just not a good situation for you to be invested in a fund that you don't trust.

**C.**     ***The Hurricane***

108.     On October 2, 2018, in the CSM Fund Discord channel, Spence claims that he sent money to fund the withdrawals to BX.  BX posts later that same day that the "the withdrawal queue has been processed."

109.     On October 7, 2018, Spence posts in the CSM Fund Discord channel, "withdraws processing from mex now."

110.     On October 9, 2018, BX posts in the CSM Fund Discord channel to apologize to the group for the delay in withdrawals.  He tells the group that he had to fly in to see his family and help them prepare for an approaching hurricane.

111.     On October 14, 2018, BX posts in the CSM Fund Discord forum apologizing for the lack of communication.  He tells the group that between helping his family through the hurricane and then going on a planned business trip, he did not have a secure internet connection to handle the withdrawals.

112.     Now, with a secure internet connection at hand, BX tells the group he has encountered another problem: Spence had failed to fund the withdrawals.  BX writes, "I'm home now, I checked and the BTC [Bitcoin] did not make it to the hardware wallet.  So I have to get with CS [@coin_signals] and figure out why not."

**D.**     ***Spence "Loses" 40 Bitcoins to Hackers***

113.     On October 15, 2018, Spence posts on the CSM Fund Discord channel and blames the lack of withdrawals on a hack to his account: "There was an issue with the liquid btc account,

as a portion of the transfers (40btc) sent to the funds's hardware wallet didn't go through to the right address."

114.    Spence told the group that he had hired a security firm to conduct a thorough audit and to run tests to ensure future transfers of Bitcoin would not be subject to hacks.  For the next two weeks, in various messages Spence tells the group about the progress he is making with his security consultants and that he should be ready to process withdrawals once systems testing is complete.

115.    On October 31, 2018, Spence posts on the CSM Fund Discord forum that withdrawals will finally move forward.  He writes, "I have just come online today. Withdraws will all 100% go out tomorrow night. Then we can open another withdraw round and move on from there."

116.    No withdrawals take place.

## VI.    SPENCE CLOSES THE FUND AND CONFESSES TO INVESTORS

117.    On November 4, 2018, Spence tells investors that he is closing the fund.  In a post on the CSM Fund Discord channel he provides a revised timeline for withdrawals and promises that everyone will get their full balances:

> Moving forwards. Because of how things have gone, I've decided to close down the fund and return everything back to you guys. I think this is the best decision for now, but it may change in the future.
>
> * * *
>
> I really hate how things have gone, and I'm sure you all have as well. Everything will be wrapped up and everyone will get their full balances back soon. On one last high note, since the beginning the mex fund is up almost 500btcs :). I still think it was a worthwhile venture, its just too bad things had to end this way.

118.     Over the next month Spence posts on Discord that he is actively working on a plan to distribute funds to investors.  Privately, however, he is still trading with investor's money and, in the process, incurs fresh losses.

119.     At last, on November 28, 2018, out of excuses and no closer to distributing funds to investors, Spence finally admits his fraud.  He reveals for the first time (1) that the hack was larger than he originally disclosed, (2) that, unbeknownst to investors, a portion of the CSM Fund was actually invested in "illiquid OTC Coins," and (3) that he had recently incurred new losses, even after announcing the CSM Fund would be closed and investments returned:



120.     On December 20, 2018, Spence elaborates on his confession of fraud and tells his investors how sorry he is for his actions.  In a post on Discord, Spence states:

Hi @everyone.

I've spent the past two months trying to hide my drawdowns with lies and deceit. I continually tried to stall for the positions I was in to be in a better state, but that never came.

I sincerely apologize. I know this has taken up a ton of your time and energy and escalated things to levels that they should not have been escalated to. I was in a

very bad state of mind through all this and continued to make things worse by making more bad trading decisions.

I know this is likely falling on deaf ears now, and its too little too late. But I really do feel ashamed for how I handled things. Risk is a part of the game, and I should have been more honest with my losses.

The one thing that remained true through all my announcements is that all I really want to do is get everyone their money and wash my hands of all this. I've never had any intentions to make off with anyone's money.

## VII.   THE EVERMARKETS ICO

121.    In addition to running the Funds, Spence also solicited investors to pool funds with him to participate in Initial Coin Offerings ("ICOs").

122.    An Initial Coin Offering ("ICO") is the cryptocurrency equivalent of an initial public offering.  ICOs act as fundraisers for companies whereby instead of offering shares of stock to the public, the company issues a new cryptocurrency token specific to that ICO.

123.    The company holding the ICO uses the investor funds as a means of furthering its business, such as launching a new product or service.  Investors, in turn, hope that the token will perform well into the future, providing them with a significant return on their investment.

124.    Since many companies holding ICOs do not want to deal with small investors, they establish high minimum investments to discourage smaller investors.  As a result, many investors often pool their funds together to participate in ICOs.

125.    Spence solicited investors to pool money with him to participate in an ICO being offered by the start-up EverMarkets.

126.    A number of plaintiffs sent Spence their cryptocurrency to participate in the EverMarkets ICO.  Spence pooled the funds together and sent them to EverMarkets in connection with their ICO.

127.    After receiving investor funds, however, EverMarkets cancelled their ICO and returned funds back to investors.

128.    Spence received the pooled funds back from EverMarkets, but kept the money for himself and failed to return any of it to Plaintiffs.

## VIII.    THE *LAGEMANN* LAWSUIT

129.    On December 26, 2018, ten investors in the Funds filed a lawsuit against Spence, Cruz-Herrera, and BX in Federal District Court in New York.

130.    That lawsuit, *Manfred Lagemann, et al. v. Jeremy Spence, et. al*, No. 18-Cv-12218 (GBD), which is currently pending before Hon. George B. Daniels, alleges many of the same facts above and asserts claims for, among other things, fraudulent inducement, breach of fiduciary duty, fraudulent misrepresentation, negligent misrepresentation, rescission, unjust enrichment, conversion, and civil conspiracy.

131.    In his Answer, responses to written discovery, and in response to the vast majority of questions posed to him in his March 22, 2018 deposition, Jeremy Spence invoked his Fifth Amendment right against self-incrimination.

## IX.    DAMAGES

132.    Taking into consideration all deposits and withdrawals, each Plaintiff is a net loser in the Funds, having deposited more into the Funds than they withdrew.

133.    Chart 1, below, sets forth Plaintiffs' Net Losses due to their investments in the CSM Fund, the Alts Fund, and the Long-Term Fund and shows that as of filing this complaint, Defendants' actions have damaged Plaintiffs by no less than $1,187,150.33.

**Chart 1:  Net Loss from The CSM Fund,**
**Alts Fund, and Long-Term Fund**

| Last Name | Net Loss [In BTC] | Net Loss [In $] |
|---|---|---|
| Alm | 3.4990500 | $26,721.82 |
| Appel | 1.0500000 | $7,413.42 |
| Arber | 1.0745699 | $21,112.14 |
| Baptiste | 1.4386700 | $10,687.85 |
| Baptistella | 4.5374598 | $33,290.12 |
| Boele | 2.0000000 | $15,723.27 |
| Brown | 1.8832309 | $21,893.42 |
| Cao | 2.5200000 | $20,390.13 |
| Chen | 5.0000000 | $41,342.05 |
| Cheralla | 1.7500000 | $11,347.19 |
| Dale | 0.5090900 | $3,199.64 |
| Dat | 1.2500000 | $8,852.27 |
| Davida | 1.1000141 | $7,355.34 |
| Flannagan | 0.8000000 | $10,729.04 |
| Franklin | 0.7913120 | $6,368.36 |
| Goswick | 1.0000000 | $8,217.70 |
| Gritter | 4.3471441 | $54,909.32 |
| Heijligers | 3.6300000 | $37,081.03 |
| Hilderman | 2.0000000 | $16,999.31 |
| Hoogland | 1.0000000 | $6,779.58 |
| Illøkken | 1.3000000 | $17,423.91 |
| Johnsgaard | 0.8300000 | $13,557.20 |
| Kolaric | 1.2253800 | $17,379.60 |
| Korak | 0.9939709 | $8,519.85 |
| Kort | 1.1125644 | $7,543.99 |
| Martinez | 4.5903339 | $45,924.39 |
| Ochomma | 9.1900000 | $42,221.28 |
| Ooi | 1.0000000 | $8,415.26 |
| Panchal | 4.6870000 | $33,646.91 |
| Papadopoulo | 4.1500000 | $34,842.65 |
| Peng | 2.9995000 | $22,931.26 |
| Pike | 0.9153557 | $6,812.13 |
| Porter | 0.2800000 | $2,315.15 |
| Qu | 0.2500000 | $2,067.10 |
| Rakshit | 13.0000000 | $118,945.92 |
| Rautio | 1.3000000 | $16,129.51 |
| Reynolds | 1.3700000 | $7,845.46 |

| Last Name | Net Loss [In BTC] | Net Loss [In $] |
|-----------|------------------|-----------------|
| Riedstra | 3.9428533 | $22,260.05 |
| Rocsin | 3.2935659 | $24,709.53 |
| Rosenbaum | 0.2500000 | $2,227.82 |
| San Martin | 0.7500000 | $6,798.03 |
| Schutte | 0.6664614 | $16,939.06 |
| Segers | 1.8390903 | $12,250.07 |
| Shapiro | 17.4995000 | $128,175.98 |
| Spokoini | 1.5786693 | $22,403.68 |
| Stewart | 0.4735112 | $3,570.73 |
| Syed | 0.3988812 | $3,127.54 |
| Teoh | 3.3135470 | $24,053.47 |
| Tsui | 1.0000000 | $10,374.22 |
| Venter | 4.2575368 | $33,426.58 |
| Wallin | 1.5989600 | $10,407.67 |
| Wallner | 0.7070000 | $4,890.46 |
| Watt | 0.0337493 | $2,106.68 |
| Weisz | 2.1750000 | $27,293.01 |
| Wildes | 1.3060000 | $16,447.35 |
| Yehudaey | 1.3200000 | $15,173.34 |
| Young | 3.0537888 | $23,580.46 |
| **Total** | **139.8327600** | **$1,187,150.33** |

134.    In addition, Chart 2, below, sets forth the Plaintiffs' net losses due to Spence's failure to return funds entrusted to him in connection with the EverMarkets ICO.

**Chart 2:  Net Loss from EverMarkets ICO**

| Last Name | Net Loss [In ETH] | Net Loss [In $$] |
|-----------|------------------|------------------|
| Alm | 2.00000 | $1,876.04 |
| Brown | 2.00000 | $1,618.18 |
| Franklin | 5.00000 | $3,025.85 |
| Mak | 18.00000 | $16,884.36 |
| Schutte | 2.00000 | $1,876.04 |
| Yehudaey | 1.00000 | $1,231.58 |
| Young | 1.00000 | $920.11 |
| **Total** | **31.00000** | **$27,432.16** |

135.    Plaintiffs also seek pre-judgment and post-judgment interest, costs, and attorneys' fees.  Plaintiffs reserve their rights to revise their damage analysis as discovery develops.

## COUNT I

## <u>FRAUD</u>
### (AGAINST ALL DEFENDANTS)

136.    Plaintiffs incorporate by reference and reallege each allegation contained above, as though fully set forth herein.

137.    Defendants Spence and John Doe #1 (a//k/a BX) made numerous misrepresentations of fact to the Plaintiffs.

138.    These statements include:

  a.    That Spence was a successful cryptocurrency trader;

  b.    That his trading strategies had generated tremendous cryptocurrency gains for him;

  c.    That the Funds accurately reported trading gains and losses;

  d.    That investors could deposit and withdraw their funds at regularly-scheduled intervals.

  e.    That investors' withdrawals in Fall 2018 were being processed on multiple occasions when, in fact, they were not;

  f.    That Spence's cryptocurrency accounts had been hacked and that hackers stole 40 Bitcoin from Spence which had been earmarked for investor withdrawals;

  g.    That Spence's Funds had experienced only moderate losses in late 2018;

  h.    That Spence's Funds were invested in positions that could be liquidated in order to meet investor withdrawals;

  i.    That Spence had stopped making trades on behalf of the Funds when he announced their closure; and

  j.    That money sent to Spence for the EverMarkets ICO had been returned, or would be returned, to investors.

139.   Defendants made these statements with actual knowledge that they were false.

140.   As to promises made by Defendants, Defendants never intended to keep those promises when they were made.

141.   Defendants intended that Plaintiffs would rely on these statements.

142.   Plaintiffs justifiably relied on these statements.

143.   As a result of Defendants' actions, Plaintiffs have suffered damages.

144.   Wherefore, Plaintiffs demand entry of a judgment against Defendants returning their property to them and for an award of damages to be determined at trial, including an award of interest and costs.

## COUNT II

## NEGLIGENT MISREPRESENTATION
### (AGAINST ALL DEFENDANTS)

145.   Plaintiffs incorporate by reference and reallege each allegation contained above, as though fully set forth herein.

146.   Defendants Spence and John Doe #1 (a//k/a BX) made numerous misrepresentations of fact to the Plaintiffs.

147.   These statements include:

   a.   That Spence was a successful cryptocurrency trader;

   b.   That his trading strategies had generated tremendous cryptocurrency gains for him;

   c.   That his funds accurately reported trading gains and losses;

   d.   That investors could deposit and withdraw their funds at regularly-scheduled intervals.

   e.   That investors' withdrawals in Fall 2018 were being processed on multiple occasions when, in fact, they were not;

      f.      That Spence's cryptocurrency accounts had been hacked and that hackers stole 40 Bitcoin from Spence which had been earmarked for investor withdrawals;

      g.      That Spence's Funds had experienced only moderate losses in late 2018;

      h.      That Spence's Funds were invested in positions that could be liquidated in order to meet investor withdrawals;

      i.      That Spence had stopped making trades on behalf of the Funds when he announced their closure; and

      j.      That money sent to Spence for the EverMarkets ICO had been returned, or would be returned, to investors.

148.    These statements were false.

149.    Defendants Spence and BX knew or should have known that these statements were false when made.

150.    Plaintiffs relied on those statements made by Defendants.

151.    Defendants intended Plaintiffs to rely on these statements.

152.    By virtue of their control over Plainitffs' investments and their superior knowledge and skill, Defendants Spence and BX had both privity and a special relationship with Plaintiffs.

153.    Plaintiffs have suffered an injury, namely deprivation of their property and a diminution in its value, while in Defendants' possession.

154.    Wherefore, Plaintiffs demand entry of a judgment against Defendants Spence and BX returning their property to them and for an award of damages to be determined at trial, including an award of interest and costs.

## COUNT III:

## BREACH OF FIDUCIARY DUTY
### (AGAINST JEREMY SPENCE)

155.    Plaintiffs incorporate by reference and reallege each allegation contained above, as though fully set forth herein.

156.    Based on his various promises and representations, Plaintiffs entrusted Spence to invest their money for them in accordance with the trading strategies he had advertised on his various Discord channels.

157.    By virtue of his control over their investments and his superior knowledge and skill, Spence owed a fiduciary duty to Plaintiffs.

158.    Spence knowingly breached that duty by, among other things, investing in a manner inconsistent with his advertised trading strategies, hiding investment losses from Plaintiffs, lying about the operations of the Funds (including when withdrawals would be processed), and refusing to return Plaintiffs' funds upon demand.

159.    With respect to the EverMarkets ICO, Defendant Spence had a fiduciary duty to his co-investors once he solicited and accepted their money for pooling and investment in EverMarket's ICO.

160.    Defendant Spence breached his fiduciary duties to his co-investors by failing to return their funds once EverMarkets decided to not go forward with their ICO and refunded the pooled funds to Spence.

161.    As a result of Spence's breaches of his fiduciary duties, Plaintiffs have suffered an injury, namely deprivation of their property, and a diminution in its value, while in Spence's possession.

162.    Wherefore, Plaintiffs demand entry of a judgment against Spence returning their property to them and for an award of damages to be determined at trial, including an award of interest and costs.

## COUNT IV

## BREACH OF CONTRACT
### (AGAINST JEREMY SPENCE)

163.    Plaintiffs incorporate by reference and reallege each allegation contained above, as though fully set forth herein.

164.    Through words and conduct, Spence and Plaintiffs formed a contract for the investments of their cryptocurrencies in the Funds.

165.    Likewise, through words and conduct, Plaintiffs and Spence formed a contract governing their investments in the EverMarkets ICO.

166.    Spence breached those contracts by, among other things, investing in a manner inconsistent with his advertised trading strategies, hiding investment losses from Plaintiffs, lying about the operations of the Funds (including when withdrawals would be processed), and refusing to return Plaintiffs' funds to them once demanded.

167.    With respect to the EverMarkets ICO, Spence breached his contract with investors by failing to send their funds back to them when EverMarkets did not proceed with its ICO and refunded the group's pooled funds to Spence.

168.    As a result of Spence's breaches of contract, Plaintiffs have suffered damages including benefit of the bargain damages, consequential damages, and out-of-pocket losses.

169.    Plaintiffs also seek specific performance in the form of a return of their property still in Spence's possession.

170.     Wherefore, Plaintiffs demand entry of a judgment against Spence for an award of damages to be determined at trial, including an award of interest and costs and, to the extent feasible, specific performance by means of a return of property.

## COUNT V

## CONVERSION
### (AGAINST JEREMY SPENCE)

171.     Plaintiffs incorporate by reference and reallege each allegation contained above, as though fully set forth herein.

172.     In connection with Spence's three Funds and the EverMarkets ICO, Plaintiffs entrusted cryptocurrency and other money to Spence to invest on their behalf.

173.     There were no separate, legal entities for those funds.  Instead, Spence treated Plaintiffs' property as his own and invested them in accounts in his own name.

174.     Beginning in September 2018, Plaintiffs made repeated demands of Spence for return of their investments.

175.     By means of excuses, delay, and outright lies, Spence has refused, and continues to refuse, to return Plaintiffs' property to them.

176.     Once Plaintiffs requested return of their investments, Spence no longer had authorization to exert control over Plaintiff's property.

177.     Instead of returning such investments to Plaintiffs, Spence continued to exert dominion and control over Plaintiffs' property, and continues to exert dominion and control to this day.

178.    Wherefore, Plaintiffs demand entry of a judgment against Defendant Spence ordering the return of their property and for an award of damages to be determined at trial, including an award of interest and costs.

## COUNT VI

## UNJUST ENRICHMENT
### (AGAINST JEREMY SPENCE)

179.    Plaintiffs incorporate by reference and reallege each allegation contained above, as though fully set forth herein.

180.    Plaintiffs sent cryptocurrency and other money to Spence for investment into the Funds.

181.    There were no separate, legal entities for the Funds.  Instead, Spence treated Plaintiffs money as his own and invested it in accounts in his own name.

182.    Despite repeated requests, Spence has refused to return Plaintiffs' investments to them.

183.    Allowing Spence to keep these funds, which were not his to begin with and were only entrusted to him for investment on behalf of others, would be "against equity and good conscience."

184.    Wherefore, Plaintiffs demand entry of a judgment ordering Defendant Spence to return their property and for an award of damages to be determined at trial, including an award of interest and costs.

## COUNT VII

## <u>ACCOUNTING</u>
### (AGAINST JEREMY SPENCE)

185.    Plaintiffs incorporate by reference and reallege each allegation contained above, as though fully set forth herein.

186.    Based on his various promises and representations, Plaintiffs entrusted Spence to invest their money for them in accordance with the trading strategies he had advertised on his various Discord channels.

187.    By virtue of his control over their investments and his superior knowledge and skill, Spence owed a fiduciary duty to Plaintiffs.

188.    Spence knowingly breached that duty by, among other things, investing in a manner inconsistent with his advertised trading strategies, hiding his investment losses from Plaintiffs, lying about the operations of his Funds (including when withdrawals would be processed), and refusing to return plaintiffs' property to them once demanded.

189.    With respect to the EverMarkets ICO, Defendant Spence breached his fiduciary duties to his co-investors by failing to return their funds to them once EverMarkets decided to not go forward with their ICO and returned the pooled funds to Spence.

190.    As a result of Spence's breaches of his fiduciary duties, Plaintiffs have been deprived of their investment funds, have seen those funds commingled with Spence's personal funds, and have seen those funds decrease in value.

191.    Wherefore, Plaintiffs demand that Spence be required to make a full and fair accounting of all cryptocurrency and other money entrusted to him for the Funds.

192.    In addition, Defendant Spence should be required to make a full and fair accounting of all cryptocurrency and other money received by him in connection with the EverMarkets ICO.

## DEMAND FOR A JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs demand trial by jury in this action of all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that the Court enter a judgment:

A.      Ordering Defendant Spence to return Plaintiffs' property;

B.      For an award of reasonable and just compensatory damages to Plaintiffs in an amount to be determined at trial;

C.      For an equitable accounting; and

D.      For such other and further relief as this Court deems just, proper, and equitable.

Respectfully submitted,

Dated: May 3, 2019                    JONATHAN BRENNAN PLLC
       New York, New York

_____

By:   Jonathan J. Brennan
      200 Vesey St., 24th Fl.
      New York, NY  10281
      Telephone: (212) 388-6957
      E-mail:  jon@jbrennanpllc.com

*Attorney for Plaintiffs*