USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 12/15/2022

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
ANDERS ALM, ET AL.,

                Plaintiffs,

      - against -

JEREMY SPENCE, ET AL.,

                Defendants.
-----------------------------------------------------------X

19-CV-4005 (GBD) (RWL)

**REPORT AND RECOMMENDATION TO HON. GEORGE B. DANIELS: <u>DAMAGES INQUEST</u>**

**ROBERT W. LEHRBURGER, United States Magistrate Judge.**

      This is a fraud case in which sixty Plaintiffs asserted claims to recover their losses from Defendant Jeremy Spence who squandered Plaintiffs' cryptocurrency investments and converted Plaintiffs' funds for himself. The Honorable George B. Daniels, U.S.D.J., granted default judgment against Spence and referred this matter to me to conduct an inquest on damages. Since then, the number of Plaintiffs due recovery in this action have diminished significantly. More than thirty Plaintiffs are seeking restitution from criminal proceedings against Spence that extinguish their claims here, or otherwise have decided to no longer pursue their claims in this action. Eight Plaintiffs have failed to further prosecute their claims. As a result, a total of 19 Plaintiffs are due damages in this inquest and are referred to herein as the "Recovering Plaintiffs." For the reasons set forth below, I recommend that the Court award Recovering Plaintiffs, collectively, (1) $418,687.78 in damages (broken down individually below), (2) pre-judgment interest at the statutory rate of 9% starting from November 28, 2018, as calculated by the Clerk of Court, (3) $695 in costs, and (4) post-judgment interest at the statutory rate as calculated by the Clerk of Court.

1

# FACTS[1]

Plaintiffs are individuals whose investments Spence misappropriated through fraud, deception, and lies. (FAC ¶¶ 16-76.) Spence's scheme involved two components: a Ponzi-scheme-like investment fraud, and misappropriation of funds.

## A. The Fraudulent Funds

Using the digital platform Discord, Spence presented himself as a successful cryptocurrency trader and built an extensive online following.[2] (FAC ¶¶ 1, 85-89.) Spence promoted and solicited investments in several cryptocurrency investment funds, including the Coin Signals Mex Fund ("CSM Fund"), the Alts Fund ostensibly devoted to alternative cryptocurrencies, and the Long-Term Fund (collectively the "Funds"). (FAC ¶¶ 2-3, 90-92, 94-95.) Recovering Plaintiffs each invested in at least one of the Funds. (*See* Brennan Decl. ¶¶ 22-81 and Ex. O.)

By all outward appearances to investors, the Funds performed well and operated like normal investment funds for the first eight months of 2018. (FAC ¶¶ 5-6, 96-99.) As

---

[1] The facts are drawn primarily from the First Amended Complaint (Dkt. 8) ("FAC"); the Declaration of Jonathan J. Brennan In Support Of Motion For Default Judgment filed on August 10, 2020 (Dkt. 21) ("Brennan Decl."); the supplemental Declaration of Jonathan J. Brennan In Support Of Damages Inquest filed on September 30, 2022 (Dkt. 32-17) ("Supp. Brennan Decl."); the declarations of each individual Recovering Plaintiff filed on September 30, 2022 (Dkts. 32-1 to 32-16); the declarations of three additional Recovering Plaintiffs attached to Plaintiffs' letter filed on November 2, 2022 (Dkt. 39); and all exhibits attached to the foregoing. Reference also is made to the letters of Jonathan J. Brennan, dated September 30, 2022 (Dkt. 32) ("Brennan Letter"), November 2, 2022 (Dkt. 39) ("Second Brennan Letter"), and November 28, 2022 (Dkt. 42) (Third Brennan Letter).

[2] Cryptocurrencies are digital or virtual currencies in which encryption techniques are used to regulate the generation of units of currency and to verify the transfer of funds. Operating independently of central banks, cryptocurrencies generally employ blockchain technology to record transactions over a decentralized network of computers. (FAC ¶ 82.)

it turned out, however, none of the Funds were established as separate legal entities, and none were registered with any appropriate regulatory body. (FAC ¶ 4.) In reality, the Funds were simply loose pools of money that Spence held and traded in his own name. (*Id.*)

In August 2018, the Funds incurred large trading losses. (FAC ¶¶ 8, 100.) Those losses were followed by numerous withdrawal requests from investors. (FAC ¶¶ 8, 104.) Rather than honestly disclosing the full extent of his losses, however, Spence spent the next three months lying to his investors and trading their assets into further losses. (FAC ¶¶ 9, 101-05.)

Spence repeatedly lied to his investors about the status of their withdrawals, and he invented increasingly more elaborate and implausible excuses to keep them at bay. (FAC ¶¶ 9, 106-118.) He told investors he was restructuring the Funds and would get them their withdrawals once the restructuring was complete. (FAC ¶¶ 10, 106-07.) He manufactured a family emergency and then an imaginary "hack" into his account, both of which were supposedly responsible for further delays in implementing investor withdrawals. (FAC ¶¶ 10, 109, 115-17.)

In early November 2018, Spence announced he was closing the Funds and promised investors a plan of distribution that would return their full investments to them. (FAC ¶¶ 11, 119-20.) The promised distribution never came. (FAC ¶ 11.)

Finally, on November 28, 2018, out of excuses, Spence admitted his fraud. He told investors he had lied about the size of the hack; he revealed for the first time that the Funds contained certain illiquid assets; and he confessed to incurring more trading losses even after announcing the closure of the Funds. (FAC ¶¶ 12, 121-22.) Spence's

investors, including Recovering Plaintiffs, never recovered the assets they had invested with Spence's Funds. (FAC ¶¶ 15, 108, 118, 130.) Collectively, Recovering Plaintiffs incurred net losses in the amount of $392,863.94 from investing in the Funds.[3]

**B.      Spence's Misappropriation Of Plaintiffs' EverMarkets Investments**

In addition to running the Funds, Spence solicited investors to pool funds with him to participate in an Initial Coin Offering ("ICO") being offered by the start-up EverMarkets.[4] (FAC ¶¶ 13, 123, 127.) Several investors sent Spence their cryptocurrency to participate in the EverMarkets ICO. (FAC ¶¶ 13, 128, 137.) Spence pooled the funds together and sent them to EverMarkets to purchase tokens as part of the ICO. (Id.)

After receiving investor funds, however, EverMarkets cancelled its ICO and refunded all money. (FAC ¶¶ 14, 129.) Spence received the pooled money back from EverMarkets but kept the money for himself rather than returning it to Plaintiffs. (FAC ¶¶

---

[3] The total net loss figure associated with the Funds is the sum of the net losses of each individual Recovering Plaintiff as set forth in their respective declarations. (*See also* Third Brennan Letter ¶ 1.)

[4] An Initial Coin Offering ("ICO") is the cryptocurrency equivalent of an initial public offering. (FAC ¶ 124.) ICOs act as fundraisers for companies whereby instead of offering shares of stock to the public, the company issues a new cryptocurrency token specific to that ICO. (*Id.*) The company holding the ICO uses the investor funds as a means of furthering its business, such as by launching a new product or service. (FAC ¶ 125.) Investors, in turn, hope that the token will perform well into the future, providing them with a significant return on their investment. (*Id.*) Many ICOs establish high minimum investments to discourage smaller investors. (FAC ¶ 126.) As a result, investors often pool their funds together to participate in ICOs. (*Id.*)

14, 130.) Collectively, six Recovering Plaintiffs incurred losses of $25,793.84 due to Spence's failure to return the funds they invested in the EverMarkets ICO.[5]

**C.      The Criminal Case**

On January 24, 2021, the United States Attorneys' Office and the Federal Bureau of Investigation filed a criminal complaint against Spence.  Spence pled guilty to commodities fraud and, on May 11, 2022, was sentenced to 42 months in prison and ordered to pay restitution in the amount of $2,847,743 (the "Restitution Order").  *United States v. Spence*, 21-CR-116 (S.D.N.Y. May 17, 2022) (Dkt. 39).

Thirty-four of the original Plaintiffs in the instant action elected to participate in the criminal Restitution Order.  (Supp. Brennan Decl. ¶ 10.)  None of those Plaintiffs are seeking recovery for losses invested in the Funds as part of the civil judgment in this case.  (Supp. Brennan Decl. ¶ 12.)  Six Plaintiffs participating in the Restitution Order still have claims associated with their EverMarkets' losses, which were not included in the Restitution Order, and which are being sought here.[6]

---

[5] The total net loss figure associated with the EverMarkets ICO is the sum of the net losses of each individual Recovering Plaintiff as set forth in their respective declarations. (*See also* Third Brennan Letter ¶ 1.)

[6] Brennan Letter at 2 n.1; Declarations of Timothy D. Franklin dated August 31, 2022 (Dkt. 32-5) ¶¶ 9-14; Tim Mak dated August 31, 2022 (Dkt. 32-6) ¶¶ 9-14; Roland R. Schutte dated July 9, 2022 (Dkt. 32-13) ¶¶ 9-16; Naor Yehudaey dated September 17, 2022 (Dkt. 32-15) ¶¶ 9-16; Craig Young dated September 8, 2022 (Dkt. 32-16) ¶¶ 9-14; and Charles Yoon dated October 26, 2022 (Dkt. 39-3) ¶¶ 21-27.

## JURISDICTION AND PROCEDURAL HISTORY

The Court has subject matter jurisdiction because there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000.[7] 28 U.S.C. § 1332. Venue is proper in this District, and the Court has personal jurisdiction over the Defendant for several reasons, including that Spence is, or was at the time Complaint was filed, domiciled in New York and many of the events at issue took place in New York.

Plaintiffs commenced this action on May 3, 2019. (Dkt. 1.) Spence was served with the Complaint on June 17, 2019. (Brennan Decl. ¶ 4; Dkt. 7.) Plaintiffs filed a First Amended Complaint ("FAC") on July 19, 2019. (Dkt. 8.) Spence was served with the FAC on September 18, 2019. (Brennan Decl. ¶ 5; Dkt. 12.) Spence did not appear or answer. On February 4, 2020, and again on February 18, 2020, Plaintiffs' counsel informed Spence both by email and Twitter that he was in default and provided Spence with the FAC and summons. (Brennan Decl. ¶¶ 7-14.) Spence still did not answer or appear, and he has not done so to date.

On April 13, 2020, Plaintiffs filed for a certificate of default, which the Clerk of Court entered the same day. (Dkts. 16-18.) On August 10, 2020, Plaintiffs moved for default judgment. (Dkts. 19-23.) Plaintiffs served Spence with both the application for the certificate of default, as well as the default motion papers. (Brennan Decl. ¶18 and Ex.

---

[7] The Recovering Plaintiffs are domiciled in varied states and countries, including, for example, Australia, England, the Netherlands, and others. Based on the allegations of the Complaint, as well as the individual declarations submitted by each Recovering Plaintiff, no Recovering Plaintiff is domiciled in New York, where Spence is domiciled. (*See* FAC ¶¶ 17-76.)

M; Certificates of Service attached to Dkts. 19-23.) Judge Daniels granted the motion for default judgment, which was entered on October 28, 2020. (Dkts. 24-25.) On May 19, 2022, the matter was referred to me for a damages inquest.[8] (Dkt. 28.)

On July 19, 2022, the Court issued an order requesting Plaintiffs to submit supplemental proof as to each individual Plaintiff's damages and the effects, if any, from restitution ordered in Spence's criminal case. (Dkt. 31; *see also* Dkts. 26, 29.) Plaintiffs filed their additional proof on September 30, 2022, accompanied by the Brennan Letter from Plaintiffs' counsel. (Dkt. 32.)

The Brennan Letter explained that of the original 60 Plaintiffs, 29 had their claims fully extinguished by the Restitution Order, and three Plaintiffs no longer desired to participate in these proceedings and wished to dismiss their claims against Spence. (Dkt. 32 at 2-3.) The Brennan Letter further sought permission to withdraw as counsel for 12 Plaintiffs due to "irreconcilable differences" making further representation "untenable" (the "Pro Se Plaintiffs"). (Dkt. 32 at 4.)

On October 3, 2022, the Court issued an order stating that Plaintiffs' counsel's letter seeking to withdrawal was insufficient for that purpose and directing counsel to formally move to withdraw by October 10, 2022. The order directed that Plaintiffs' counsel serve the order on all Plaintiffs and warned that (1) if the Court grants the motion to withdraw, the Pro Se Plaintiffs would have 30 days to appear by counsel or pro se; (2) whether or not the motion is granted, any Plaintiff, whether represented or not, needed to submit a sworn affidavit or declaration attesting to the damages allegedly incurred due to

---

[8] The lengthy gap between default judgment and inquest is attributed to the criminal case that was filed and completed in the interim.

Spence's conduct; and (3) that any Plaintiff who does not submit such an affidavit or declaration would be deemed to have failed to prosecute their case and would not be able to recover damages. (Dkt. 33.) Plaintiffs' counsel filed proof of service of the October 3, 2022 order on the Pro Se Plaintiffs.[9] (Dkt. 37.)

Plaintiffs' counsel filed a formal motion to withdraw on October 10, 2022 (Dkt. 34), which the Court granted on October 28, 2022 without any opposition from any Plaintiffs or Spence. (Dkt. 38.) The Court issued an order giving the Pro Se Plaintiffs until November 27, 2022 to appear by counsel or proceed pro se and, in either event, to submit a sworn statement of their individual damages. (*Id*.) The October 28, 2022 order contained the same admonition as the October 3, 2022 order that any Plaintiff, whether represented or not, must submit to the Court a sworn affidavit or declaration attesting to their individual damages and that any Plaintiff who fails to do so will be deemed to have failed to prosecute their case and will not be able to recover damages. (*Id*.) Plaintiffs' counsel filed proof of service of the October 28, 2022 order. (Dkt. 41.)

On November 2, 2022, Plaintiffs' counsel filed the Second Brennan Letter. (Dkt. 39.) That letter represented that since filing the motion to withdraw, counsel heard from four Plaintiffs regarding their status. One, Luke Porter, submitted a declaration of his damages. (Dkt. 39-1.) Two others, Zachary Wildes and Charles Yoon, who had been subject to the withdrawal motion and order, reinitiated contact with counsel and submitted

---

[9] The proof of service includes 11, not 12, Pro Se Plaintiffs. That appears to be due to the fact that in the interim between counsel's filing of its motion to withdraw and service of same along with the October 3, 2022 order, one of the Pro Se Plaintiffs re-established contact with counsel as set forth in the Second Brennan Letter with the consequence that plaintiffs' counsel withdrew the motion to withdraw as to that individual. (*See* Dkt. 39.)

8

declarations attesting to their damages.[10] (Dkts. 39-3, 39-4.) Finally, one Plaintiff, Loek Rosenbaum, wished to dismiss his case. (Second Brennan Letter at No. 2.)

On November 28, 2022, Plaintiffs' counsel filed the Third Brennan Letter, presenting the final list of plaintiffs still seeking recovery in this action, and those Plaintiffs who no longer wish to participate due to recovery of losses from the Restitution Order or for other reasons. (Third Brennan Letter ¶¶ 1, 3.) As of November 29, 2022, no additional Pro Se Plaintiff had made an appearance through counsel or submitted a declaration of damages.

As a result, and accounting for the Plaintiffs whose claims are extinguished by participating in the Restitution Order and the Plaintiffs who have declined to further prosecute their claims, only 19 Plaintiffs remain who are entitled to receive damages pursuant to this inquest. The Recovering Plaintiffs are: Cornelis P. Boele; Kerry Chen; Mark T. Cheralla; Nguyen Q. Dat; Timothy D. Franklin; Tim Mak; Maurice J. Martinez; Eva Papadopoulo; Luke Porter; Kainan Qu; Ankur Rakshit; Harro Riedstra; Sever A. Rocsin; Roland R. Schutte; Amy Syed; Zachary Wildes; Naor Yehudaey; Charles Yoon; and Craig Young.

## LEGAL STANDARDS

When a defendant defaults, all well-plead facts alleged in the complaint, except those relating to the amount of damages, must be accepted as true. *City Of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 137 (2d Cir. 2011) ("It is an ancient common

---

[10] Plaintiffs' counsel sought to withdraw its motion to withdraw as to Wildes and Yoon. (Dkt. 39.) Inasmuch as an order already was entered granting the motion to withdraw (Dkt. 38), the Court simply deemed Plaintiffs' counsel to have renewed their appearance for those Plaintiffs. (Dkt. 40.)

law axiom that a defendant who defaults thereby admits all well-pleaded factual allegations contained in the complaint") (internal quotations marks and citation omitted); *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009) (a [trial] court is required to accept all of the [plaintiff's] factual allegations as true and draw all reasonable inferences in its favor"). "This principle applies regardless of whether default is entered as a discovery sanction or for failure to defend." *Walpert v. Jaffrey*, 127 F. Supp.3d 105, 129 (S.D.N.Y. 2015) (internal quotations marks and citation omitted). The court may also rely on factual allegations pertaining to liability contained in affidavits and declarations submitted by the plaintiff. *See, e.g.*, *Tamarin v. Adam Caterers, Inc.*, 13 F.3d 51, 54 (2d Cir. 1993); *Fustok v. ContiCommodity Services, Inc.*, 873 F.2d 38, 40 (2d Cir. 1989). Nonetheless, the court "must still satisfy itself that the plaintiff has established a sound legal basis upon which liability may be imposed." *Shld, LLC v. Hall*, No. 15-CV-6225, 2017 WL 1428864, at *3 (S.D.N.Y. Apr. 20, 2017) (internal quotation marks and citation omitted); *see Finkel*, 577 F.3d at 84.

Once liability has been established, a plaintiff must provide admissible evidence establishing the amount of damages with reasonable certainty. *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., Division Of Ace Young Inc.*, 109 F.3d 105, 111 (2d Cir. 1997); *see also Lenard v. Design Studio*, 889 F. Supp.2d 518, 527 (S.D.N.Y. 2012) (in an inquest following a default, "[a] plaintiff must … substantiate a claim with evidence to prove the extent of damages").

To assess whether the plaintiff has established a sufficient basis for damages, a court has the discretion, but is not required, to hold a hearing. *See* Fed. R. Civ. P. 55(b)(2); *Fustok* 873 F.2d at 40. An inquest into damages may be conducted on the

papers, without an evidentiary hearing, where there is a sufficient basis on which to make a calculation. *See Bricklayers & Allied Craftworkers Local 2, Albany, New York Pension Fund v. Moulton Masonry & Construction, LLC*, 779 F.3d 182, 189 (2d Cir. 2015)*; Tamarin* 13 F.3d at 53-54; *Maldonado v. La Nueva Rampa, Inc.*, No. 10-CV-8195, 2012 WL 1669341, at *2 (S.D.N.Y. May 14, 2012) (R&R adopted Aug. 9, 2012). There is sufficient basis to do so here. No party has requested a hearing, and the Court has determined that none is needed.

## LIABILITY

The FAC asserts several causes of action against Spence, including common law fraud, negligent misrepresentation, breach of fiduciary duty, breach of contract, conversion, and unjust enrichment.[11] To obtain damages, Recovering Plaintiffs must establish Spence's liability for at least one of their claims. The FAC ostensibly does so with respect to every cause of action Plaintiffs assert. For purposes of the instant inquest, however, the Court focuses on only two of them: fraud and conversion.

To prevail on a common law fraud claim under New York law, a plaintiff must prove: "(1) a misrepresentation or omission of material fact; (2) that the defendant knew to be false; (3) that the defendant made with the intention of inducing reliance; (4) upon which

---

[11] The FAC also asserts a claim for Commodity Pool Fraud in violation of §§ 4o and 22(a) of the Commodities Exchange Act, 7 U.S.C. § 6o and 7 U.S.C. § 25(a)(1). (FAC ¶¶ 139-48.) Those provisions impose liability for commodity pool operators and commodity trading advisors. Plaintiffs have not briefed whether Spence is either a commodity pool operator or a trading advisor within the meaning of the statute. Accordingly, the Court does not further discuss that asserted basis of liability. Regardless, the damages sought by Plaintiffs are recoverable under the other established bases of liability. The FAC additionally asserted a claim for an accounting, which is an equitable remedy and not necessary to determine the damages sought. (*See* FAC ¶¶ 198-205.)

11

the plaintiff reasonably relied; and (5) that caused injury to the plaintiff." *Hunt v. Enzo Biochem, Inc.*, 530 F.Supp.2d 580, 592 (S.D.N.Y. 2009) (citing *Crigger v. Fahnestock and Co., Inc.*, 443 F.3d 230, 234 (2d Cir.2006); *Wynn v. AC Rochester*, 273 F.3d 153, 156 (2d Cir. 2001)). The FAC sets forth facts, which accepted as true, establish each of those elements.

Among other misrepresentations and omissions of material fact, Spence misrepresented: that Spence was a successful cryptocurrency trader; that his trading strategies had generated tremendous cryptocurrency gains for him; that the Funds accurately reported trading gains and losses; that investors could deposit and withdraw their funds at regularly-scheduled intervals; that investors' withdrawals in Fall 2018 were being processed on multiple occasions when, in fact, they were not; that Spence's cryptocurrency accounts had been hacked and that hackers stole funds from Spence which had been earmarked for investor withdrawals; that Spence's Funds had experienced only moderate losses in late 2018; that Spence's Funds were invested in positions that could be liquidated in order to meet investor withdrawals; that Spence had stopped making trades on behalf of the Funds when he announced their closure; and that money sent to Spence for the EverMarkets ICO had been returned, or would be returned, to investors. (FAC ¶¶ 93, 101-22, 128-30, 151.) Spence knew that his representations were false, confessing as much to the investors he intended to rely on them. For example, on November 28, 2018, Spence posted a message to investors that began, "Alright guys.. time to come clean on why I've been so evasive to get this distribution done with," and then provided some details of his deceptions. (FAC ¶ 121.) On December 20, 2018, Spence admitted that "I've spent the past two months trying to hide my drawdowns with

12

lies and deceit." (FAC ¶ 122.) Finally, Plaintiffs reasonably relied on Spence's misrepresentations by investing their funds and holding off on withdrawals, as a result of which each Recovering Plaintiff incurred a net loss of the cryptocurrency that they had invested with Spence.[12] (*See* FAC ¶¶ 134-37.)

"The 'two key elements' of conversion [under New York law], are (1) the plaintiff's possessory right or interest in the property ... and (2) the defendant's dominion over the property or interference with it, in derogation of the plaintiff's rights." *Zamora v. FIT International Group Corp.*, 834 F. App'x 622, 629 (2d Cir. 2020) (quoting *Colavito v. New York Organ Donor Network*, Inc., 8 N.Y.3d 43, 50, 827 N.Y.S.2d 96, 100(2006)) (cleaned up); *see also Thyroff v. Nationwide Mutual Insurance Co.*, 460 F.3d 400, 403–04 (2d Cir. 2006) ("According to New York law, conversion is the unauthorized assumption and exercise of the right of ownership over goods belonging to another to the exclusion of the owner's rights." (quoting *Vigilant Insurance Company of America v. Housing Authority*, 87 N.Y.2d 36, 44, 637 N.Y.S.2d 342, 346 (1995)) (cleaned up).[13] Here, the FAC

---

[12] The FAC does not expressly set forth facts demonstrating that each Recovering Plaintiff, as distinct from Plaintiffs collectively, relied on Spence's misrepresentations to invest with him and hold off on their withdrawals. But a reasonable inference that they did so can be drawn, barely, from the totality of the allegations about the misrepresentations made and the chronological narrative presented. *Compare Stanley v. Skowron*, 958 F.Supp.2d 417, 426 (S.D.N.Y. 2013) ("The Complaint pleads facts sufficient to raise an inference that Morgan Stanley reasonably relied on Skowron's denials of wrongdoing"), *with Brown v. Lower Brule Community Development Enterprise, L.L.C.*, No. 13-CV-7544, 2014 WL 5508645, at *8 (S.D.N.Y. Oct. 31, 2014) ("there are simply no facts in plaintiff's complaint from which a district court could draw an inference of reasonable reliance") (cleaned up). In any event, the declaration of each Recovering Plaintiff establishes reasonable reliance. *See, e.g.*, Declaration of Cornelis P. Boele (Dkt. 32-1) ¶ 11 (describing investments made based on Spence's representations).

[13] This opinion uses a "cleaned up" parenthetical to indicate that internal quotation marks, brackets, citations, emphases, or combinations thereof have been omitted from the

demonstrates that Plaintiffs provided funds to Spence for investment in the Spence Funds and that Spence did not honor the Plaintiffs' demands for withdrawals of their assets from the Funds. Nor did Spence return funds that Plaintiffs provided for investment in the EverMarkets CIO that never occurred. In both instances, Plaintiffs had a right to return of their funds, yet Spence never returned them, thus establishing conversion.

## DAMAGES

As Defendants' liability has been established, the Court turns to evaluating damages and other relief. The Recovering Plaintiffs seek: (1) damages totaling $418,687.78; (2) pre-judgment interest at the statutory rate; (3) costs of $695, and (4) post-judgment interest at the statutory rate. Plaintiff has provided sufficient evidence to support each of those items.

**A.    Net Loss Damages**

For damages, Recovering Plaintiffs specifically seek to recover their "out-of-pocket" net losses. (Pl. Mem. at 9.[14]) Such losses are recoverable as damages for liability on several, if not all, of the causes of action established by Recovering Plaintiffs, including

---

quoted source. Any further alterations or emphases to the quoted source by this Court are noted in a separate parenthetical.

[14] "Pl. Mem." refers to Plaintiffs' Memorandum Of Law In Support Of Motion For Default Judgment filed July 10, 2020 (Dkt. 20).

14

fraud,[15] negligent misrepresentation,[16] breach of fiduciary duty,[17] conversion,[18] and breach of contract.[19] Simply put, "[Recovering] Plaintiffs have the right to be made

---

[15] *See, e.g.*, *Negrin v. Kalina*, No. 09-CV-6234, 2013 WL 6671688, at *4 (S.D.N.Y. Dec. 17, 2013), *R&R adopted*, 2014 WL 67231 (S.D.N.Y. Jan. 7, 2014) ("Where fraud is claimed, the measure of damage is 'the actual pecuniary loss sustained as the direct result of the wrong'") (quoting *Lama Holding Co. v. Smith Barney Inc.*, 88 N.Y.2d 413, 421, 646 N.Y.S.2d 76, 79 (1996)); *Brown v. Stinson*, 821 F. Supp. 910, 916 (S.D.N.Y. 1993) (noting "the proper measure of damages for fraud under New York law is plaintiff's out-of-pocket loss.").

[16] *See, e.g.*, *Kortright Capital Partners LP v. Investcorp Investment Advisers Ltd.*, 392 F. Supp.3d 382, 398 (S.D.N.Y. 2019), appeal withdrawn, No. 19-2836, 2019 WL 6652238 (2d Cir. Sept. 23, 2019) ("For negligent misrepresentation claims, the New York Court of Appeals has reiterated that '[d]amages are to be calculated to compensate plaintiffs for what they lost because of the fraud, not to compensate them for what they might have gained' or 'profits which would have been realized in the absence of fraud'") (quoting *Lama Holding Co.*, 88 N.Y.2d at 421, 646 N.Y.S.2d at 80).

[17] *See, e.g.*, *Niles v. Palmer*, No. 97-CV-7573, 1999 WL 1419042, at *15 (S.D.N.Y. Oct. 22, 1999) (entering default judgment against defendants and holding that as a result of defendants' breach of fiduciary duty, plaintiff was entitled to recover as damages the amount of loss she sustained); *Briarpatch Ltd., L.P. v. Geisler Roberdeau, Inc.*, 513 F. Supp.2d 1, 5 (S.D.N.Y. 2007) (entering default judgment against defendant and noting that "damages related to a breach of fiduciary duty may be comprised of either the loss to the plaintiff(s) or the benefit derived by the defendant(s)").

[18] *See, e.g.*, *Bank of America Corp. v. Braga Lemgruber*, No. 02-CV-1041, 2007 WL 4548298, at *8 (S.D.N.Y. July 10, 2007), *R&R adopted as modified*, 2007 WL 4510329 (S.D.N.Y. Dec. 20, 2007) ("Compensatory damages for conversion are measured by the full value of the property at the time of conversion, plus interest") (quotations omitted); *Homkow v. Musika Records, Inc.*, No. 04-CV-3587, 2009 WL 721732, at *13 (S.D.N.Y. Mar. 18, 2009) ("Damages for conversion are usually the value of the property at the time of conversion") (internal quotations omitted).

[19] *See, e.g.*, *Industrial Craft, Inc. v. Bank of Baroda*, 47 F.3d 490, 495 (2d Cir.1995) ("when computing damages for a defendant's wrongful conduct, if any benefit or opportunity for benefit appears to have accrued to the plaintiff because of the breach, a balance must be struck between benefit and loss, and the defendant is only chargeable with the net loss.") (internal quotation marks and citation omitted) (cleaned up); *Aristocrat Leisure Ltd. v. Deutsche Bank Trust Company Americas,* 727 F. Supp.2d 256, 289 (S.D.N.Y. 2010) (awarding bondholders net losses after offsetting gains, and stating "if a victim derives a

whole." *Lemgruber*, 2007 WL 4548298, at *8 (stating that the measure of damages under plaintiffs' conversion, breach of fiduciary duty, and breach of contract/warranty claims "is essentially identical. Plaintiffs seek the monies Defendants embezzled ….").

Plaintiffs' damages are readily determinable from the information provided about their investments, withdrawals, and net losses in the Funds and the cancelled EverMarkets ICO. The relevant information specific to each Recovering Plaintiff is set forth in paragraphs 21-81 and Exhibit O of the Brennan Declaration, and the declaration of each Recovering Plaintiff. (*See also* Third Brennan Letter ¶ 1.) The Court finds the information provided to be sufficiently reliable to reasonably establish the damages asserted. The total of each Recovering Plaintiff's net losses is summarized in the following chart.

|    | **Plaintiff** | **Spence Funds** | **EverMarkets ICO** | **Total Loss** |
|----|---------------|------------------|---------------------|----------------|
| 1  | Boele         | $15,723.27       |                     | **$15,723.27** |
| 2  | Chen          | $41,342.05       |                     | **$41,342.05** |
| 3  | Cheralla      | $11,347.19       |                     | **$11,347.19** |
| 4  | Dat           | $8,852.27        |                     | **$8,852.27**  |
| 5  | Franklin      |                  | $3,025.85           | **$3,025.85**  |
| 6  | Mak           |                  | $16,884.36          | **$16,884.36** |
| 7  | Martinez      | $45,924.39       |                     | **$45,924.39** |
| 8  | Papadopoulo   | $34,842.65       |                     | **$34,842.65** |
| 9  | Porter        | $2,315.15        |                     | **$2,315.15**  |
| 10 | Qu            | $2,067.10        |                     | **$2,067.10**  |
| 11 | Rakshit       | $118,945.92      |                     | **$118,945.92**|
| 12 | Riedstra      | $22,260.05       |                     | **$22,260.05** |
| 13 | Rocsin        | $24,709.53       |                     | **$24,709.53** |

benefit from the breaching party's breach of contract, the breaching party only is responsible for the victim's net loss").

16

| 14 | Schutte |  | $1,876.04 | **$1,876.04** |
|---|---|---|---|---|
| 15 | Syed | $3,127.54 |  | **$3,127.54** |
| 16 | Wildes | $16,447.35 |  | **$16,447.35** |
| 17 | Yehudaey |  | $1,231.58 | **$1,231.58** |
| 18 | Yoon | $44,959.48 | $1,885.90 | **$46,845.38** |
| 19 | Young |  | $920.11 | **$920.11** |

The total of all losses combined for the Recovering Plaintiffs collectively is $418,687.78.

**B.   Pre-Judgment Interest**

In a diversity case such as this one, state law governs the award of pre-judgment interest. *Schipani v. McLeod*, 541 F.3d 158, 164-65 (2d Cir. 2008). The Court thus applies New York law, which provides that that pre-judgment interest "shall be recovered upon a sum awarded because of a breach of performance of a contract." N.Y. C.P.L.R. § 5001(a); *see also U.S. Naval Institute v. Charter Communications, Inc.*, 936 F.2d 692, 698 (2d Cir. 1991) ("a plaintiff who prevails on a claim for breach of contract is entitled to prejudgment interest as a matter of right"). The statutory rate of pre-judgment interest prescribed by New York law is 9% per annum calculated on a simple interest basis. N.Y. C.P.L.R. § 5004.

As for the time frame for calculating pre-judgment interest, the New York rule directs that "[i]nterest shall be computed from the earliest ascertainable date the cause of action existed[.]" N.Y. C.P.L.R. § 5001(b). Spence first admitted his fraud on November 28, 2018, and that is the date Recovering Plaintiffs propose using as the ascertainable date. (FAC ¶ 121; Pl. Mem. at 14.) The Court agrees. Recovering Plaintiffs thus are entitled to an award of pre-judgment interest at the statutory rate of 9% from November 28, 2018, to the date of judgment as calculated by the Clerk of Court.

C.  **Costs**

A prevailing party is entitled to recover costs.  *See* Fed. R. Civ. P. 54(d)(1) ("Unless a federal statute, these rules, or a court order provides otherwise, costs – other than attorney's fees – should be allowed to the prevailing party").  Recovering Plaintiffs are the prevailing parties by default.  They seek $695 in costs for the court filing fee ($400) and two process servers ($295).  (Brennan Decl. ¶ 83 and Exs. Q, R.)  Costs associated with docket fees and other miscellaneous fees, including process servers, expressly may be recovered pursuant to Local Civil Rule 54.1(10), and are routinely awarded.  *See e.g.*, *Malletier v. Artex Creative International Corp.*, 687 F. Supp.2d 347, 364-65 (S.D.N.Y. 2010) (costs such as filing fees and other ancillary costs are "typically awarded when a defendant defaults"); *Tips Exports, Inc. v. Music Mahal, Inc.*, No. 01-CV-5412, 2007 WL 952036, at *11 (E.D.N.Y. Mar. 27, 2007) (reimbursing plaintiff for process servers and postage); *Shannon v. Fireman's Fund Insurance Co.*, 156 F. Supp.2d 279, 305 (S.D.N.Y. 2001) (reimbursing plaintiff for filing fees and shipping costs).  The Court has reviewed Recovering Plaintiffs' submissions and finds sufficient proof of the costs paid and that they are recoverable.  Accordingly, Recovering Plaintiffs should be awarded $695 in costs.

D.  **Post-Judgment Interest**

Whereas pre-judgment interest in a diversity case is governed by state law, post-judgment interest is governed by federal statute.  Specifically, 28 U.S.C. § 1961(a) provides that "[i]nterest shall be allowed on any money judgment in a civil case recovered in a district court … [and] shall be calculated from the date of the entry of the judgment."  In light of the statute's imperative language, the Second Circuit has "consistently held that

an award of postjudgment interest is mandatory." *Schipani,* 541 F.3d at 165 (citing *Westinghouse Credit Corp. v. D'Urso*, 371 F.3d 96, 100 (2d Cir.2004)). Accordingly, post-judgment interest should be awarded.

## CONCLUSION

For the foregoing reasons, I recommend:

A. Awarding Recovering Plaintiffs: (1) $418,687.78 in damages representing the collective sum of each Recovering Plaintiff's individual damages as set forth in the chart above; (2) pre-judgment interest at the statutory 9% rate starting from November 28, 2018, as calculated by the Clerk of Court; (3) $695 in costs; and (4) post-judgment interest at the statutory rate as calculated by the Clerk of Court. (*See* Proposed Judgment In A Civil Action at Dkt. 32-19.)

B. Dismissing the case without prejudice as to the 33 Plaintiffs whose claims are fully extinguished by the Restitution Order or who otherwise have determined not to further prosecute their claims in this action. (*See* Proposed Notice Of Voluntary Dismissal Of Certain Plaintiffs at Dkt. 32-18; Dkt. 39 (as to Plaintiff Loek Rosenbaum); and Third Brennan Letter ¶ 3 (stating intent to file notice of voluntary dismissal).)

C. Dismissing the case without prejudice as to the 8 Plaintiffs who have failed to prosecute their cases by failing to appear after withdrawal of counsel, namely: Graham Brown, Kerry Flannagan, Irvin Hoogland, Tomas Illokken, Anders Johnsgaard, Daniel C. Reynolds, Sarel J. Venter, and Maurice Weisz.

## OBJECTIONS AND RIGHT TO APPEAL

Pursuant to 28 U.S.C. § 636(b)(1) and Rules 72, 6(a), and 6(d) of the Federal Rules Of Civil Procedure, the parties shall have fourteen (14) days to file written

objections to this Report And Recommendation. Such objections shall be filed with the Clerk of the Court, with extra copies delivered to the Chambers of the Honorable George B. Daniels, United States Courthouse, 500 Pearl Street, New York, New York 10007, and to the Chambers of the undersigned, United States Courthouse, 500 Pearl Street, New York, New York 10007. **Failure to file timely objections will result in a waiver of objections and will preclude appellate review.**

## SERVICE OF THIS REPORT AND RECOMMENDATION

Plaintiffs shall serve Defendant with a copy of this Report and Recommendation consistent with the methods previously approved by the Court within 3 days of its entry and shall file proof of service of same within 3 days after service.

Respectfully Submitted,

_____
ROBERT W. LEHRBURGER
UNITED STATES MAGISTRATE JUDGE

Dated: December 15, 2022
      New York, New York

Copies transmitted this date to all counsel of record.